FRANK A. WAGNER, ADMINISTRATOR OF THE ESTATE OF MARY SEARS, AND GUARDIAN OF MABEL SEARS AND ROBERT SEARS, PETITIONER-DEFENDANT IN CERTIORARI, v. PRINCETON WORSTED MILLS, INCORPORATED, RESPONDENT-PROSECUTOR IN CERTIORARI.

Submitted February 1, 1932—Decided June 16, 1932.

Before Justices TRENCHARD and DONGES.

For the prosecutor in *certiorari, Wall, Haight, Carey & Hartpence.*

For the defendant in *certiorari, Charles Quinn.*

PER CURIAM.

This writ of *certiorari* brings up for review a judgment of the Mercer County Common Pleas Court affirming a judgment of the workmen's compensation bureau in favor of the petitioner, who claimed compensation on account of the death of Ellsworth Sears, a workman employed by the Princeton Worsted Mills, which it was alleged arose out of and in the course of his employment.

The evidence shows that the decedent was working as a fireman in the plant of his employer on a hot and sultry August day in 1929; he was thirty-nine years of age and in very good health; he was working around the boiler in a very oppressive atmosphere in which there was some coal gas. The testimony was to the effect that he became affected by the heat and asked his fellow workman to watch the gauge while he, Sears, went to get some better air. He passed around the fan and motor in back of the boiler to a point where there was a ladder leading to a platform which ran around both sides in back of the boiler. Perhaps he was not actually seen to fall, but his fellow workman testified: "I seen Mr. Sears coming backwards trying to catch himself, he fell there in front of one of the doors." The physical indications would seem to lead to the inference that his fall was the result of a misstep on the ladder. He was found at the foot of the ladder with "one hand on the first rung of the ladder." He was bleeding considerably at the nose and he had red and black wounds or marks upon his temple and cheek, from which a fall from a more or less height might well be inferred.

The contention of the employer was and is that he did not die from accident, but from apoplexy. Opposed to this contention is the testimony of the only medical witness called (decedent's family physician for twenty-four years and entirely familiar with his physical condition), who testified that he did not die from apoplexy, but that he died evidently by coming in contact with something producing physical violence resulting in a very considerable loss of blood.

In the face of this evidence we cannot say that the case is without ample and legal support in the evidence, especially in view of the fact that two independent and distinct tribunals who have considered the testimony reached the conclusion that the death was caused by accident arising out of and in the course of the employment.

The judgment will be affirmed, with costs.